# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-251-21 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEMARCO CLAYTON, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Demarco Clayton ("Clayton") for release due to the danger from the coronavirus. (Doc. No. 569 ["Mot"].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 573 ["Opp'n"].) For the reasons that follow, Clayton's motion is denied.

## I. BACKGROUND

On April 24, 2019, Clayton was one of twenty-one individuals charged in a drug conspiracy. (Doc. No. 13 [Indictment].) At the time of his arraignment on the federal indictment, Clayton was in state court on a parole violation and was brought over on a writ. (Doc. No. 109 [Application for Writ].) On October 24, 2019, pursuant to a plea agreement, Clayton entered a plea of guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (10-24-2019 Minutes; Doc. No. 380 [R&R]; 396 [Order Adopting R&R and Accepting Guilty Plea]; Doc. No. 397 [Plea Agreement].)

On February 28, 2020, the Court sentenced Clayton to a term of 102 months imprisonment. (2-28-2020 Minutes; Doc. No. 556 [Judgment].) On March 10, 2020, Clayton filed a notice of appeal from the Court's judgment. (Doc. No. 558.) Clayton's appeal is still pending, and he is currently incarcerated at Northeast Ohio Correctional Center ("NEOCC").

On April 15, 2020, Clayton filed the present motion seeking an order from this Court "for his immediate release to home detention due to the substantial risk to himself and the community from the current COVID-19 pandemic." (Mot. at 3990.) Clayton "submits that the health risk to himself and the community is incredibly heightened in this pandemic given the conditions in the federal jails, where it is impossible to practice safe social distancing and proper hygiene. Further, Mr. Clayton claims that he previously suffered from a deflated lung and seizures as a result of being shot, and had to utilize a ventilator." (*Id.* at 3991.) According to Clayton, this puts him at a higher risk of contracting COVID-19, and, in fact, he insists that he has been "suffering from headaches, fever, and weakness, all signs of a coronavirus infection, without receiving medical assistance from the prison." (*Id.*)

II. **DISCUSSION**

In support of his request for release, Clayton cites the Bail Reform Act, 18 U.S.C. § 3142(i). (Mot at 3990-91.) The government contends that § 3142(i) is not available to Clayton— a post-sentencing federal prisoner—and that, instead, his motion should be evaluated under 18 U.S.C. § 3143. The Court agrees with the government. "18 U.S.C. § 3142(i), which 'permit[s] the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason' . . . does not apply to defendants . . . who have already been sentenced." *United States v.*

2

*Pereyra-Polanco*, 19 Cr. 10 (NRB), 2020 WL 1862639, at *2 (S.D.N.Y. Apr. 14, 2020) (collecting cases); *see also United States v. Harris*, No. 19-356, 2020 WL 1503444 (D.D.C. Mar. 27, 2020) (noting that 18 U.S.C. § 3142(i) "applies only to a person seeking release pending trial[,]" and did not apply to individual awaiting sentencing).

Release pending appeal, as relevant here, is governed by 18 U.S.C. 3143(b)(2), which requires that a court detain a person found guilty of certain felony crimes pending appeal. *See, e.g., United States v. Harris*, No. 19-356, 2020 WL 1503444 (D.D.C. Mar. 27, 2020) (evaluating motion for immediate release due to COVID-19 of defendant awaiting sentencing under § 3143). One category of qualifying crimes involves offenses for which the maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801. Clayton is subject to the mandatory presumption of detention as he has been convicted and sentenced on a charge of possession with intent to distribute controlled substances, an offense under the Controlled Substance Act that carries with it a maximum term of imprisonment of twenty years. 21 U.S.C.§ 841(b)(1)(C); *see* 18 U.S.C. §§ 3142(f)(1)(C), 3143(b)(2).

Once detained in accordance with § 3143(a)(2), an exception contained in § 3145(c) allows release pending sentencing or appeal "under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate" and the defendant poses no risk of flight or danger. 18 U.S.C. § 3145(c) (emphasis added). Additionally, a moving defendant must "make two showings pursuant to § 3143(b)(1): (A) by clear and convincing evidence, that he is not likely to flee or pose a threat to the safety of any other person or the community; and (B) that his appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence that

does not include a prison term, or a sentence of a prison term less than the time he has served plus the expected duration of the appeal." *United States v. Mullet*, No. 13-3205, 2013 WL 8367565, at *1 (6th Cir. July 24, 2013).

The Court finds that Clayton is unable to make the required showings to warrant release. "Exceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). There is no dispute that COVID-19 presents serious ongoing concerns for millions of people, especially those with certain underlying medical conditions. It is for this reason that some courts have determined that the heightened threat posed by COVID-19 to an inmate with a documented risk factor in a detention facility with confirmed cases of COVID-19 can present a "unique combination of circumstances" that meets the "exceptional circumstances" requirement. *See, e.g., United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *3 (S.D.N.Y. Mar. 30, 2020) (inmate awaiting sentencing in a facility with an outbreak of COVID-19, who had previously been released on bond prior to entering a guilty plea and had a documented respiratory condition, established "exceptional circumstances" to justify his temporary release.) While Clayton maintains that he previously suffered a punctured lung, he has failed to substantiate this claim with medical documentation, and he has otherwise failed to come forward with any evidence that he is at a higher risk of contracting COVID-19. *See also United States v. Clark*, No. 3:13-CR-163 2019 WL 1052020 (W.D.N.C. Mar. 5, 2019) (rejecting motion for compassionate release due to lack of medical documentation). Further, while Clayton's claims that he is presently experiencing certain symptoms, the Court notes that Clayton does not allege that he has been

diagnosed with COVID-19, that he has been exposed to the virus, that he has sought treatment at his facility for his symptoms, or that he has been examined by medical personnel as a result of his symptoms.

In fact, there are currently no confirmed cases of COVID-19 amongst the prison population at NEOCC. (Opp'n at 4013.[1]) Further, the Court is aware that the U.S. Marshals Service has taken extraordinary measures to limit the threat posed by COVID-19. These preventive measures include: (1) aggressive screening, isolation, and treatment of suspected cases of the virus; (2) the placement of limitations on prisoner movements within facilities; and (3) the institution of procedures for staff to call-off and obtain medical care if exhibiting symptoms to avoid exposure to inmates. Clayton's institution has also taken several safety following measures to stop the spread of the virus. While the Court is sympathetic to Clayton's concern about contracting the COVID-19 virus, "speculation about future conditions does not constitute a 'compelling reason' for temporary release." *See United States v. Bastianelli*, No. 17-305, 2020 WL 1493559, at *1 (W.D. Pa Mar. 27, 2020) (collecting cases denying requests for temporary release due to generalized concerns about COVID-19); *see also United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (noting that "it is a rare case in which health conditions present an 'exceptional reason'" to allow release where otherwise detention would be warranted).

Additionally, the Court finds that Clayton poses a danger to others and to the community. Clayton's adult felony record—which began in 2002 and continued until he was arrested on a

---

[1] One staff member has tested positive for COVID-19. (Opp'n at 4013, citing Ohio Dept, of Rehab. and Corr. website.) Clayton does not allege that he has come into contact with this individual.

state court parole violation in 2019—is punctuated by multiple drug trafficking and weapons convictions. (Doc. No. 525 [Final Presentence Investigation Report ("PSR")] at 3671-77.) Clayton has also failed to demonstrate that his appeal is not being pursued for the purposes of delay and that it raises a substantial question of law or fact. Clayton pleaded guilty pursuant to a guilty plea wherein he waived a number of his appellate rights. The government has indicated that it intends to seek dismissal of the appeal on the strength of the appellate waiver. (Opp'n at 4013, citing Plea Agreement at 2263.) The current pandemic does not change the fact that Clayton does not meet the standard for release under 18 U.S.C. § 3143.

Finally, given Clayton's criminal history and his history of parole and supervised release violations, the Court is far from convinced that he would remain compliant on temporary release. "A defendant who is unable to comply with conditions of release poses potential risk to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *United States v. Clark*, No. 19-40068-10-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020. Courts have found that the increased burden on pretrial services to monitor high-risk prisoners on home detention during this national crisis, as well as the likely risk to law enforcement who would have to take a non-compliant home detainee back into custody, also weigh in favor of denying motions for temporary release. *See, e.g., United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (denying request for release due to COVID-19—notwithstanding defendant's asthma, high blood pressure, and diabetes—noting that location monitoring puts pretrial services officers at risk); *United States v. Aiad-Toss*, No. 4:19-cr-00521, 2020 WL 1514482 (N.D. Ohio Mar. 30,

6

2020) (observing that "releasing . . . to home detention and electronic monitoring creates its own risks and undue burden on pretrial services").

## III. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's response brief, Clayton's motion for release is denied.

**IT IS SO ORDERED**.

Dated: April 22, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**